JEROME S. LACHINSKI, Transferee, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lachinski v. Commissioner
Docket No. 10929-83.
United States Tax Court
T.C. Memo 1986-334; 1986 Tax Ct. Memo LEXIS 275; 51 T.C.M. (CCH) 1665; T.C.M. (RIA) 86334; July 31, 1986. Wilbur F. Dorn, Jr., for the petitioner. Barbara A. Olson, for the respondent. WILBUR
MEMORANDUM OPINION WILBUR, Judge: Respondent determined *279 that petitioner is liable as transferee of East Bethel Bottle Shop, Inc. for a Federal income tax deficiency of $7,795.39 determined to be due from that corporation for the taxable year ended June 30, 1978. The only issue for decision is whether petitioner is liable, as transferee, for the personal holding company tax deficiency of East Bethel Bottle Shop, Inc., for the taxable year ended June 30, 1978. This case was submitted under Rule 122 [1]. The stipulation of facts and the attached exhibits are incorporated herein by this reference. The pertinent facts are summarized below. Jerome S. Lachinski (hereafter petitioner) resided at 120 Laurel Avenue, Wyoming, Minnesota, when he filed his petition in this case. The East Bethel Bottle Shop, Inc. (hereafter "the transferor") was incorporated under the laws of the state of Minnesota. The transferor operated as a retail liquor store until March of 1976 when the business was sold by petitioner who held 100 percent of its stock. On November 17, 1977, the board of directors of the transferor adopted a plan of complete liquidation *280 and on March 20, 1978, petitioner, as sole shareholder, approved the plan of liquidation and sale of assets. On September 18, 1978, the transferor filed a "Corporate Dissolution or Liquidation" form with the Internal Revenue Service Center in Ogden, Utah, as required for corporations within 30 days of their adoption of a resolution or plan of liquidation. For the taxable year ended June 30, 1978, the transferor had total gross income of $24,172.25 consisting of $16,873.92 of interest income, and $7,298.93 of capital gain net income. At the start of the taxable year ended June 30, 1978, the transferor owed $17,378.83 to petitioner. The statement of Distribution of Assets filed by the transferor, however, indicates that as of the date of liquidation petitioner owed the transferor $11,550.45. All distributions made by the transferor to petitioner as sole shareholder were recorded on the corporation's books and records as repayment of loans and as notes receivable. The transferor reported distributions of property totaling $35,896.66 on its final corporate tax return but failed to designate any part of these distributions as a dividend. In addition, the transferor did not designate *281 any of the distributions received during the 1978 taxable year as dividends. Furthermore, the transferor did not mark the appropriate box on its return stating that it was a personal holding company, nor did it attach a Schedule PH. During the taxable year 1978, petitioner experienced marital difficulties and a Petition for Dissolution of Marriage was served upon him. He contested the dissolution proceedings in an effort to retain the right to receive the installment payments that he was to receive from the sale of his business. On December 29, 1977, a Judgment and Decree was entered which included a provision whereby petitioner was to receive only one-third of the sale proceeds, with petitioner's spouse to receive the balance. On May 12, 1981, petitioner executed and delivered to respondent an instrument ("Transferee Agreement"), wherein he agreed to assume and pay all Federal income taxes ultimately determined as due and owing by the transferor for the taxable year ended June 30, 1978. In consideration of this agreement, respondent agreed not to issue a notice of deficiency or to make any assessment against the transferor. No portion of the deficiency in personal holding company *282 tax allegedly due from the transferor, or the interest thereon, has yet been paid. It is respondent's contention that by virtue of the transfer of assets, petitioner became and remains a "transferee" within the meaning of section 6901; [2] and, therefore, petitioner is liable for any deficiency in Federal income tax due from the transferor for the taxable year ended June 30, 1978. We agree with respondent. Petitioner's liability is evidenced by the Transferee Agreement and he is estopped from denouncing it as invalid. Turnbull, Inc. v. Commissioner,373 F.2d 91 (5th Cir. 1967), affg. 42 T.C. 582 (1964). Accordingly, the only issue before us is whether the transferor was liable for the personal holding company tax for the taxable year ended June 30, 1978. Petitioner has the burden of proof on this issue. Section 6902(a); Rule 142(a), (d). [3]
*283 Prior to the 1981 changes, section 541 imposed on "every personal holding company * * * a personal holding company tax equal to 70 percent of the undistributed personal holding company income." Thus, corporations which are classified as personal holding companies are made subject not only to income tax at the regular corporate rates but also to this special surcharge. The personal holding company tax was instituted by Congress to thwart the use of closely-held corporations as a device to screen controlling shareholders from a tax on dividends at the higher individual rates. See H. Rept. No. 704, 73d Cong., 2d Sess. 11-12 (1934), 1939-1 C.B. (Part 2) 554; S. Rept. No. 558, 73d Cong., 2d Sess. 13-16 (1934), 1939-1 (Part 2) C.B. 586. A "personal holding company" is defined by section 542(a) as any corporation if (1) Adjusted Ordinary Gross Income Requirement. -- At least 60 percent of its adjusted ordinary gross income (as defined in section 543(b)(2)) for the taxable year is personal holding company income (defined in section 543(a)), and (2) Stock Ownership Requirement. *284 -- At any time during the last half of the taxable year more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than 5 individuals. * * * The 50 percent ownership requirement is clearly satisfied in the instant case because, as noted above, petitioner was the owner of 100 percent of the outstanding stock of the transferor-corporation immediately prior to the liquidation. Thus, we must determine whether the adjusted ordinary gross income requirement found in section 542(a)(1) is satisfied. Generally, "adjusted ordinary gross income" is defined in section 543(b) to mean gross income less gains from the sale of other disposition of capital assets or section 1231(b) assets; and less depreciation, taxes, interest, and rental charges incurred with regard to certain rental income and mineral royalties. "Personal holding company income," in contrast, is defined in section 543(a) as that portion of "adjusted ordinary gross income" which consists of inter alia, dividends, interest, rentals, royalties, and annuities. For the taxable year ended *285 June 30, 1978, the transferor had total gross income of $24,172.25 consisting of $16,873.92 of interest income and $7,298.93 of capital gain net income. Therefore, because gains from the sale or other disposition of capital assets are excluded, 100 percent of the transferor's "adjusted ordinary gross income" consisted of "personal holding company income." Petitioner asserts that "personal holding company income" is essentially the same as "passive investment income" as defined by section 1372(e)(5). Section 1372(e)(5) provides for the termination of a subchapter S election if, in any taxable year, more than 20 percent of a corporation's gross receipts constitute "passive investment income", defined to include gross receipts from royalties, rents, dividends, interest, minerals, and gains from the sale or exchange of stock or securities. This limitation is intended to restrict the use of Subchapter S status to corporations having substantial amounts of "active" or "operating" income, as opposed to investment income. Howell v. Commissioner,57 T.C. 546, 556 (1972). During *286 the taxable year in question, petitioner experienced marital difficulties and a Petition for Dissolution of Marriage was served upon him.He contested the dissolution proceedings in an effort to retain his right to receive the installment payments from the sale of the corporate assets. On December 29, 1977, a Judgment and Decree was entered by the Clerk of the County Court for Aitkin County, Minnesota, which provided that petitioner was to receive only one-third of the income at issue with petitioner's spouse to receive the balance. According to petitioner, because of his active and incessant efforts to contest the marital dissolution and to retain the payments he was to receive from the sale of the corporate assets, the income in question cannot properly be classified as "passive investment income" and thus should not be treated as "personal holding company income." Respondent argues that petitioner has inaccurately framed the issue in this case. Although "passive investment income", as defined in section 1372(e)(5), bears a strong conceptual resemblance to the concept of "personal holding *287 company income" as defined in section 543, there are important substantive differences. For example, rents and royalties are includible in full in "passive investment income" even if they are excluded from "personal holding company income" as defined by section 543; conversely, income from personal services is excluded from section 1372(e)(5) even if included under section 543; and the use of the "gross receipts" standard by section 1372(e)(5) creates additional distinctions (e.g., tax-exempt interest is "passive investment income" although it is not "personal holding company income".) [Bittker & Eustice, Federal Income Taxation of Corporations and Shareholders, par. 6.03, p. 6-16 (4th ed. 1979). Fn. ref. omitted.] Furthermore, the passive-active test does not appear in the section 543(a) definition of "personal holding company income." Even if such a test were to be applied by analogy, the appropriate focus would be on the income received by the corporation at the corporate level as opposed to the income received by petitioner in his individual capacity. The divorce proceedings of a shareholder simply have no effect upon the characterization of income received by the corporation. *288 The incidental fact that petitioner expended significant time and effort in attempting to retain the largest possible portion of the marital property is not relevant and is certainly not determinative. The transferor-corporation satisfies both the 60 percent income test and the 50 percent stock ownership test found in section 542(a) and therefore must be treated as a personal holding company. We note that a corporation can mitigate or even escape the apparent harshness of the personal holding company tax by virtue of a relief mechanism found in section 545(a). Clearly, the underlying purpose of the personal holding company tax is satisfied if the income is not being accumulated at the corporate level. Hence, the personal holding company is allowed a deduction to the extent that it distributes its earnings to its shareholders as taxable dividends. In effect, section 545(a) allows the corporation to reduce the amount upon which the personal holding company tax is computed by a "dividends paid deduction." *289 Under the provisions of section 561(a), the deduction for dividends paid is equal to the "dividends paid during the taxable year." According to section 561(b), the rules provided in section 562 are applicable in determining the deduction for dividends paid. Section 562(a) states generally that the term "dividend" shall include only dividends described in section 316 (relating to the definition of dividends for purposes of corporate distributions). [4] In the case of a liquidating personal holding company, as we have here, section 316(b)(2)(B) enlarges the traditional scope of a dividend to include distributions made in complete liquidation. However, section 316(b)(2)(B)(ii) provides that such a distribution in complete liquidation is given dividend status "only to the extent that the corporation designates such amounts as a dividend distribution and duly notifies such distributees of such designation, under regulations prescribed by the Secretary." [5]
*290 Section 1.316-1(b)(5)(ii), Income Tax Regs., incorporates certain portions of section 6042 and the regulations promulgated thereunder. According to section 6042(a), and section 1.6042-2, Income Tax Regs., every corporation is required to report the aggregate amount of its annual dividend payments of $10 or more along with identifying data regarding each distributee. This information must be reported on Forms 1099 or 1096 on or before February 28 of the year following payment. This Court concluded in L.C. Bohart Plumbing & Heating Co. v. Commissioner,64 T.C. 602 (1975), that strict and timely compliance with the reporting requirements of section 316(b)(2)(B) is a necessary condition for the dividends paid deduction. In the instant case the transferor neither checked the appropriate box on its tax return indicating that it was a personal holding company nor attached the appropriate Schedule PH to its return. Additionally, each distribution received by petitioner was recorded on the transferor's books and records as the repayment of money owed to petitioner or as notes receivable. [6] The transferor also reported *291 property distributions totaling $35,896.66 on its final return but failed to file the form required by section 1.316-1(b)(5)(ii), Income Tax Regs., and section 6042(a) to designate any portion of these distributions as a dividend. We note that petitioner also failed to report the receipt of any dividend income on his 1978 personal Federal income tax return. A corporation that does not alert the Commissioner as to its personal holding company status will not be permitted to recharacterize such distributions as dividends after the Commissioner has discovered its status. To reflect the foregoing, Decision *292 will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue.↩
3. Section 6902(a) provides as follows: (a) Burden of Proof. -- In proceedings before the Tax Court the burden of proof shall be upon the Secretary to show that a petitioner is liable as a transferee of property of a taxpayer but not↩ to show that the taxpayer was liable for the tax. [Emphasis added.]
4. Sec. 316(b)(2) relates to distributions by a personal holding company and provides as follows: (2) Distribution by Personal Holding Companies. -- (A) In the case of a corporation which -- (i) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or (ii) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year, the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545 without regard to distributions under this paragraph) for such year. (B) For purposes of subparagraph (A), the term "distribution of property" includes a distribution in complete liquidation occurring within 24 months after the adoption of a plan of liquidation, but -- (i) only to the extent of the amounts distributed to distributees other than corporate shareholders, and (ii) only to the extent that the corporation designates such amounts as a dividend distribution and duly notifies such distributees of such designation, under regulations prescribed by the Secretary, but (iii) not in excess of the sum of such distributees' allocable share of the undistributed personal holding company income for such year, computed without regard to this subparagraph or section 562(b)↩. 5. The relevant Treasury regulation is section 1.316-1(b)(5), Income Tax Regs., which provides as follows: SEC. 1.316-1. DIVIDENDS. (5) A corporation may designate as a dividend to a shareholder all or part of a distribution in complete liquidation described in section 316(b)(2)(B) and this paragraph by: (i) Claiming a dividends paid deduction for such amount in its return for the year in which, or in respect of which, the distribution is made, (ii) Including such amount as a dividend in Form 1099 filed in respect of such shareholder pursuant to section 6042(a) and the regulations thereunder and in a written statement of dividend payments furnished to such shareholder pursuant to section 6042(c) and sec. 1.6042-4, and (iii) Indicating on the written statement of dividend payments furnished to such shareholder the amount included in such statement which is designated as a dividend under section 316(b)(2)(B)↩ and this paragraph.
6. At the start of the taxable year 1978, the transferor-corporation owed petitioner $17,378.83. Petitioner admitted that all of the distributions he received were treated as the repayment of this loan to the extent of $17,378.83, and thereafter as an account receivable. Upon liquidation, petitioner assumed liabilities of the transferor-corporation totaling $83,601.22. An adjusting entry was made on the transferor's books for the taxable year ended June 30, 1978, which eliminated the account payable by crediting "Notes Receivable -- Officer."↩